PIERSOL ET AL. *v.* HAYS.

[No. 16,993.   Filed April 3, 1943.]

*Ira M .Sharp,* of Thorntown, for appellants.

*Charles V. Sears* and *John D. Taylor,* both of Danville (*Kane, Blain, Hollowell & Hamill,* of Indianapolis, of counsel), for appellee.

CRUMPACKER, J.—The appellants herein are the heirs at law and next of kin of one Oliver M. Piersol, late a

resident of Hendricks County, who died testate on the 27th day of July, 1940, and the appellee is the duly qualified and acting executor of the last will and testament of said decedent. On the 23rd day of October, 1941, the appellee filed a current report with the Hendricks Circuit Court showing that cash in the sum of $5,737.03 had come into his hands as such executor out of which he had paid the decedent's debts in the sum of $4,246.85. Decedent's estate, in addition to the cash above mentioned, consisted of his residence, described as Lot No. 1 in Block No. 5 in the Original Town of Danville, Indiana, with the household goods and furnishings therein contained, 186 shares of capital stock of the Danville State Bank and a Studebaker automobile which was sold by the appellee and the proceeds thereof included in the total cash with which he charged himself in said current report. There were other items of personal property of little value and of which no account seems to have been taken. The will and codicil thereto made four general cash bequests of $500.00 each, and the bank stock above mentioned was specifically bequeathed to a number of friends and relatives in various amounts. The real estate and the contents of the house thereon were devised to one Raymond Pearcy and Chloea Pearcy, his wife, as tenants by entireties. There is no residuary clause in either the will or codicil thereto and neither instrument makes mention of the appellants. It is apparent that the decedent died intestate as to approximately $3,737.03 in cash, the greater part of which was used by the appellee to pay said decedent's debts. It is claimed by the appellants that certain bequests of capital stock of the Danville State Bank lapsed by reason of the death of the beneficiaries thereof before that of the testator and as to such property there is also an intestacy. There seems

to be no evidence in the record of the death of such beneficiaries but, however that may be, all parties agree that Oliver M. Piersol died intestate as to property of substantial value.

The appellants filed objections to the current report above mentioned, the effect of which was to bring in issue the appellee's right to take possession of intestate property and use the same to discharge decedent's debts. This question was submitted to the court for trial in which appellee's current report was treated as a complaint and the objections thereto as an answer. The facts were found specially, conclusions of law favorable to the appellee were stated, and judgment entered to the effect that the appellants "or any one of them are not entitled to any of decedent's estate, either real or personal, until all debts and liabilities of his estate have been paid and satisfied and all bequests and devises of said will and codicil have been paid or delivered to said legatees and devisees." Said judgment further characterized certain bequests contained in said will and codicil as general bequests and certain others as specific. This portion of the judgment appellants moved to strike out on the theory that it was outside the issues in that the cause submitted to the court for trial was not an action to construe the testator's will but merely for the purpose of determining the appellee's right to seize intestate property and use it to pay the decedent's debts. Both this motion and that for a new trial were overruled and this appeal followed in due course. Errors assigned are: (1) In overruling the motion for a new trial; (2) in overruling the motion to modify the judgment by striking out parts thereof; (3) in each conclusion of law stated by the court; and (4) in the construction of the will and codicil thereto wherein the

status of various beneficiaries was adjudged to be that of general and specific legatees respectively.

The second and fourth assignments of error present the same question and therefore may be properly considered together. From any view of this case, the appellants, as the testator's heirs at law not mentioned in his will or the codicil thereto, are concerned only with intestate property, and we fail to see how they are harmed by a judgment which fixes the legal status of the various recipients of property in which the appellants have no interest. It is true that in said judgment certain bequests of bank stock to John C. Taylor and John A. Edwards are adjudged to be specific bequests. This falls far short of a holding that such legacies lapsed or did not lapse and it is elementary that a bequest may be specific or general irrespective of that question. In other words, a specific or a general bequest may lapse or it may not, and what happened in that respect in the case before us is not determined by the judgment here involved. That question is still open to the appellants, and we find no error of which they can complain in the overruling of their motion to modify the judgment by striking out that part of it adjudicating the character of the various bequests contained in the will and codicil.

The appellants have failed to set out the trial court's conclusions of law in their brief, and in this respect it does not comply with Rule 2-17 (e) of the Rules of the Supreme and Appellate Courts, 1940 Revision, providing that "A concise statement of so much of the record as fully presents every error and exception relied upon, referring to the pages and lines of the transcript" shall be stated in the brief. Such being the fact and such being the rule, we must hold that appellants' third assignment of error to the effect

that the trial court's conclusions of law are erroneous presents no question for review.

This leaves for our consideration the question of alleged error by the trial court in overruling appellants' motion for a new trial which charges that the decision of said court (1) is contrary to law, and (2) is not sustained by the evidence. The word "decision" when used in connection with a trial to the court means the court's finding of facts, whether general or special, and is analogous to a jury's verdict. The entire evidence in this case consists of the appellee's current report here involved, the testator's will, the codicil thereto and a certified copy of an inventory of the assets of the estate. From this evidence the court found as facts the proper execution and probate of the will and codicil, the appointment and qualification of the appellee as the executor thereof, the amount of cash in his hands as such executor and that the same is the property of the estate, the total sum paid to creditors, the aggregate cash bequests and that such bequests have not been paid or discharged. These facts are amply supported by the contents of the documents in evidence and, as other facts found by the court are immaterial to this appeal, we find no error in that regard.

We now approach the sole remaining question involved in this appeal: Is the decision of the trial court contrary to law? Numbers 2, 3, 4, 5, and 6 of the special finding of facts present this question squarely and as they constitute the crux of this entire controversy, we quote them in full:

### 2.

"Said Executor, in said Current Report, summarized separately the amount of cash that had come into his hands as such Executor as follows:

Cash on Inventory _____$ 218.82
Cash on Policy No. 136,940, U. S. Life
    Ins. Co._____ 2,252.21
Cash on Policy No. 191,948, Nat. Life
    Ins. Co. _____ 2,000.00
Cash on sale Studebaker Automobile____ 150.00
Cash from dividends of Bank Stock_____ 1,116.00

    Total cash _____$5,737.03

### 3.

"That said Executor asks credit for cash expended in the payment of vouchers numbered 1 to 32, both inclusive, in the total sum of $4,246.85, and that after said payments there was left in his hands as such Executor the sum of $1,490.18.

### 4.

"That said Executor has not disposed of nor attempted to dispose of any property of said estate which was bequeathed by the terms of said will or codicil to any of the various beneficiaries under said will and codicil, and that he has not paid any cash bequests provided for by the terms of said will and codicil, and that said cash bequests amount to the sum of $2,000.00.

### 5.

"That all the cash with which said Executor has charged himself in said current report, as set out in finding numbered 2, is the property of the estate of said decedent, Oliver M. Piersol, and subject to be used by said Executor in the payment of the debts of said estate, and that none of said cash was specifically bequeathed by the terms of said will and codicil.

### 6.

"That said will and codicil of said Oliver M. Piersol, deceased, were and are in the following words and figures, to-wit:

## "LAST WILL AND TESTAMENT OF OLIVER M. PIERSOL

"I, Oliver M. Piersol, a resident of Danville, Hendricks County, Indiana, being of sound mind and memory do make, publish and declare this my last will and Testament hereby revoking all former Wills by me heretofore made.

"Item 1. It is my will that my executors hereinafter named first pay out of my estate all of my debts including expenses of last sickness and burial.

"Item 2. I will and bequeath to Raymond L. Pearcy and Chloea Pearcy, husband and wife, and as tenants by the entireties, my residence property being Lot No. 1 in Block number Five (5) in the Original Town of Danville, Indiana, together with all furnishings therein except such as have been previously given Margaret McPhetridge Jessen and Mary McPhetridge Reilly.

"Item 3rd. I give, devise and bequeath to Chloea A. Pearcy, the sum of Five Hundred ($500.00) Dollars.

"Item 4th. I give, devise and bequeath to the Trustees of The Danville Christian Church as a permanent Endowment Trust Fund the sum of Five Hundred ($500.00) Dollars.

"Item 5th. I give, devise and bequeath to the Trustees of the Danville South Cemetery Association of Danville, Indiana, as a permanent Endowment Fund the sum of Five Hundred ($500.00) Dollars.

"Item 6th. I give, devise and bequeath to John C. Taylor, John A. Edwards, Frank E. Hays, J. H. Grimes, Charles V. Sears, Paul R. Martin, each five (5) shares of stock in the Danville State Bank of Indiana.

"Item 7th. I give, devise and bequeath to Eugine M. Whilhite, Noble A. Hughes (Albuquerque, New Mexico), Otto M. McLean and Leslie B. McLean, each five (5) shares of Stock in the Danville State Bank of Danville, Indiana; and to Ruth McPhetridge Ten (10) shares of Stock in said Bank.

"Item 8th. I give, devise and bequeath to Raymond L. Pearcy Ten (10) shares of Stock in The

Danville State Bank of Danville, Indiana, and to Charles E. Shields Five (5) Shares of Stock in The Danville State Bank of Danville, Indiana.

"Item 9th. I give, devise and bequeath to Margaret McPhetridge Jessen, Mary McPhetridge Reilly, Alice Piersol Wilson, Helen Piersol Goodpasture, Marjorie Ann Piersol, John D. Taylor, John W. Edwards and Crawford Taylor each Five (5) Shares of Stock in The Danville State Bank of Danville, Indiana.

"Item 10. I give, devise and bequeath to John C. Taylor, John A. Edwards, Frank E. Hays, J. H. Grimes, Charles V. Sears, and Paul R. Martin, directors of The Danville State Bank, Danville, Indiana, all of the balance and residue of my bank Stock, they to take the same in proportion to the Stock held by each in said Bank, including the Five (5) Shares given in Item 6 of this Will, at the date of my death.

"I hereby nominate and appoint John C. Taylor and Frank E. Hays, executors of this my last will and Testament and request that they be authorized to administer said Trust without giving bond.

"Witness my hand and seal this 23rd day of December 1938 at Danville, Indiana.

Oliver M. Piersol

## "CODICIL

"I, Oliver M. Piersol, a resident of Hendricks County, Indiana, being of sound and disposing mind and memory, and having heretofore executed my last will and testament, bearing date December 23rd, 1938, do now make, publish and declare this to be a codicil thereto:

"Item 1. After Item 1 of my said will has been complied with, I hereby give, devise and bequeath to the Trustees of The Danville Christian Church, of Danville, Indiana, the sum of Five Hundred ($500.00) Dollars as a permanent endowment fund to be placed in the Citizens Building and Loan Fund and Saving Association of Danville, Indiana, so long as said institution is a going concern, and the proceeds from said sum is to be used for the sole use and benefit of the Cradle Roll Department and

Beginners Class of said Church, in event that said Building and Loan Association liquidates or fails to properly function then said sum is to be invested by said Trustees in a first Mortgage Security and the proceeds used as aforesaid.

"This bequest is made in memory of my beloved wife, Louise M. Piersol, to which Cradle Roll and Beginners Class she was so devoted ever since its organization.

"Item II. I hereby give, devise and bequeath to Charles F. McClelland and Iris D. Gaston, and Herbert L. Wilson, all of Danville, Indiana, each five (5) shares of Stock in The Danville State Bank, of Danville, Indiana.

"In all other respects I reaffirm the provisions contained in my said last Will and Testament.

"Witness my hand and seal this 3rd day of May 1939 at Danville, Indiana.

Oliver M. Piersol (Seal)."

Upon analysis the above facts will be found to show an intestacy as to cash in the sum of $3,737.03 of which $2,246.85 has been used by the appellee, with the court's sanction, to pay the testator's debts.

If, under the law of Indiana, the appellee had the right to possess himself of all the property of which the decedent died seized, whether disposed of by instruments testamentary or not, and to use the intestate property to pay the debts properly chargeable against the estate, the judgment of the trial court approving appellee's action in so doing must be affirmed. On the other hand if the appellee's power to administer the estate is limited to the property mentioned, either specifically or generally, in the will and codicil of which he is the executor, and it was the testator's intention that his debts be paid out of such property, then the appellants, as the heirs at law and next of kin of the decedent, took the intestate property free of his debts

and the judgment of the trial court approving appellee's current report is erroneous.

In support of the latter premise appellants contend that Oliver M. Piersol, being of sound mind and memory, knew the extent and value of his property and the natural objects of his bounty. That, desiring to remember some of his friends, business associates and more distant relatives, who would take nothing if he died intestate, he made a will so disposing of a part of his estate. The remainder he desired to give to his next of kin in the manner and in the proportions provided by law and, therefore, made no mention of it in his will or the codicil thereto. His debts had to be paid in any event out of the assets of his estate and the fact that he included in his will a provision that his executor should pay them evidences an intention that they should be paid out of the property mentioned in the will. To conclude otherwise would, in legal effect, make his heirs at law residuary legatees under his will, which he could very readily have done by the instrument itself had he so intended. Such argument depends for sanction upon the proposition that when a man dies leaving a will in which provision is made for the payment of his debts but which fails to dispose of all his property, he leaves two separate and distinct estates, one of which is administered according to the will and subject to his debts, and the other passing directly to his heirs at law free from debts. We have been unable to find any authority in this State or elsewhere supporting such a doctrine.

It is only where there is no will that letters of administration can be issued, § 6-301, Burns' 1933, § 3030, Baldwin's 1934, and when a decedent dies testate his estate must be administered by either an executor or administrator with the will annexed.

Letters testamentary, when issued, extend to all the estate, personal and real, testate and intestate. § 6-312, Burns' 1933, § 3047, Baldwin's 1934. In the case of *Landers, Ex'r.* v. *Stone et al., Adm'rs.* (1873), 45 Ind. 404, we find this language: ". . . when there is a will, there shall be either an executor or an administrator with the will annexed, and his authority shall extend to and embrace all the property of the decedent, without reference to whether it is all disposed of by the will or not; and when there is no will, there is simply an administrator whose authority extends to and embraces all the property of which the decedent died possessed. Under such a construction, there will be no confusion. The entire estate is in the hands of one person." This is in accordance with the common-law rule to the effect that the whole personal estate of the deceased vests in the executor where there is a will and in the administrator where there is not. Williams on Executors, Vol. 1, p. 775. This rule is recognized by our own statute which makes it the duty of an executor to make out a true and complete inventory of the personal estate of the decedent which shall *come to his knowledge,* and not merely that mentioned in the will. § 6-701, Burns' 1933, § 3068, Baldwin's 1934. A failure to do so renders the executor liable for resulting damages. *The State* v. *Scott* (1859), 12 Ind. 530; *The State, ex rel. McClamrock et al.* v. *Gregory et al.* (1889), 119 Ind. 503, 22 N. E. 1. Certainly the law does not contemplate liability for the failure of an executor to inventory property with which he has nothing to do and concerning which he has no responsibility. In order that there may be an orderly administration of the testator's estate, it is necessary that all his personal property, whether mentioned in his will or not, be vested in his executor for that purpose. Otherwise confusion might

result and, if personal property mentioned in the will were not sufficient to pay debts, the cost of administration, last sickness and burial, vexatious and costly litigation would be necessary to reach intestate personal property in the hands of the heirs. The decedent's personal estate is liable for his debts and that liability is independent of the fact that there is an intestacy in respect to a part thereof. *Powell* v. *Jackson* (1916), 60 Ind. App. 597, 111 N. E. 208; *Kane* v. *Paul* (1840), 39 U. S. 33.

The appellants contend, however, that if all personal property is liable for the decedent's debts that part of it undisposed of by the will should not bear the entire burden to the exclusion of that of which he made testamentary disposition. The answer to that argument lies in the statutes fixing the order in which a decedent's debts shall be paid and providing for the distribution of the surplus. Section 6-1301, Burns' 1933, § 3195, Baldwin's 1934, provides as follows:

"Unless otherwise provided in this act, the debts and liabilities of a decedent, shall, if his estate be solvent, be paid in the following order of classes:

"First. The expenses of administration.

"Second. The expenses of the funeral of the deceased.

"Third. The expenses of his last sickness.

"Fourth. Taxes accrued upon the real and personal estate of the deceased at his death, and taxes assessed upon the personal estate during the course of the administration.

"Fifth. Debts secured by liens upon the personal and real estate of the decedent, created or suffered by him in his lifetime, and continuing in force: . . .

"Sixth. A sum not exceeding fifty dollars ($50.00) for wages due any employee for work and

labor performed for the decedent within two (2) months prior to his death.

"Seventh. General debts.

"Eighth. Legacies."

Also pertinent to the question is § 6-1501, Burns' 1933, § 3222, Baldwin's 1934, which we quote as follows:

"When the deceased shall have died intestate, the surplus of his estate remaining in the hands of the executor or administrator, after the payment of debts and expenses of administration (and in case the deceased died testate, after the payment of legacies also), shall be distributed to the legal heirs of the deceased according to the laws of this state in force at the time of his death."

These statutes are plain and unambiguous and therefore require no construction or interpretation by the courts. They apply to all estates alike whether disposed of by will or by operation of law, and, when applied to the facts in the case before us, it is clear that appellants' rights do not come into tangible existence until all of the testator's debts have been paid, specific legacies delivered and general legacies discharged. Any surplus remaining, including lapsed legacies if there be any, should then, and not until then, be paid to appellants.

Appellants place considerable stress on Item I of the decedent's will wherein he directs that his debts including the expense of his last sickness and burial shall first be paid out of his estate. They insist that the testator, in the use of the word "estate," intended to limit its scope to the property disposed of by the will and codicil. Words used in a will must be given their ordinary meaning unless there is language in the will which clearly indicates that their intended use was otherwise. *West* v. *Rassman* (1893), 135 Ind.

278, 34 N. E. 991; *Skinner* v. *Spann* (1911), 175 Ind. 672, 93 N. E. 1061, 95 N. E. 243; *Hoke* v. *Jackman* (1914), 182 Ind. 536, 107 N. E. 65. Technical words should be given their legal effect unless other language clearly shows that they were used in a different sense. *Coulter* v. *Crawfordsville Trust Co.* (1909), 45 Ind. App. 64, 88 N. E. 865; *Laisure* v. *Richards* (1914), 56 Ind. App. 301, 103 N. E. 679; *Runyan* v. *Rivers* (1934), 99 Ind. App. 680, 192 N. E. 327.

The word "estate," as used in a will, without limitation of context, is nearly synonymous with the word "property," where that word is not qualified. Property of every description is ordinarily included in the word "estate," and the presumption is that it is so used unless restricted by other language in the will. I Underhill on Wills, Sec. 295; *Powell* v. *Wood* (1908), 149 N. C. 235, 62 S. E. 1071; *Foil* v. *Newsome* (1905), 138 N. C. 115, 50 S. E. 597, 3 Ann. Cas. 47. It will be noted in the case at bar that the testator used no qualifying words anywhere in his will indicating that the "estate" out of which he desired his debts to be paid was anything less than all his property. In view of the fact that he had ample personal property for the purpose, and to pay his debts also, it is very evident that the testator wanted the beneficiaries named in his will to receive the specific items and definite sums of money therein mentioned free from his debts and liabilities. Any other construction of the will would defeat that purpose.

Judgment affirmed.

Blessing, C. J., not participating.

NOTE.—Reported in 47 N. E. (2d) 838.